### JOHNSON *v.* GARRETT.

### Opinion delivered July 4, 1927.

1. BROKERS—JURY QUESTION.—Whether owners employed plaintiffs to sell an oil lease *held* a question for the jury.

2. BROKERS—IMPLIED CONTRACT.—The contract whereby the owners of an oil lease employed another to sell the lease may be implied and need not be expressed, either orally or in writing.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict of the jury under proper instructions based on conflicting testimony will not be disturbed on appeal.

4. BROKERS—COMPENSATION.—A contract of employment to sell an oil lease may be valid without specifying the amount of commission, the law implying that the broker was to receive a reasonable compensation.

5. BROKERS—RIGHT TO COMMISSION.—A broker who produced a purchaser who was to and did buy an oil lease for the price asked and on the terms required, *held* entitled to a commission.

6. BROKERS—COMMISSION NOT EXCESSIVE, WHEN.—Under evidence that 5 per cent. commission on the sale of oil and gas leases was customary, an award of $18,750 as a commission to brokers for the sale of an oil lease for $375,000, which was $75,000 more than the seller had been previously offered, *held* not excessive.

Appeal from Union Circuit Court, Second Division; *W. A. Speer,* Judge; affirmed.

*T. J. Gaughan, J. T. Sifford, J. E. Gaughan* and *Elbert Godwin,* for appellant.

*Goodwin & Goodwin* and *Powell, Smead & Knox,* for appellee.

HUMPHREYS, J. Appellees, J. M. Garrett and Joe Modisett, doing business under the firm name of Garrett & Modisett, instituted this suit in the second division of the circuit court of Union County to recover $18,625 from appellants, D. N. Johnson, J. B. Hawley and W. H. Flanigan, doing business under the firm name of Smackover Petroleum Corporation, as a commission for effecting an alleged sale of an oil and gas lease located on the southeast one-quarter of section 34, township 15 south, range 15 west, Ouachita County, Arkansas, to the Phillips Petroleum Company for $375,000. It was alleged, in substance, in the complaint that appellants employed appellees to sell said lease, that they effected a sale thereof to the Phillips Petroleum Company for $375,000 in cash, and that a reasonable value for the service performed was 5 per cent. on the amount received.

Appellees filed an answer, denying the material allegations of the complaint.

The cause was submitted upon the pleadings, testimony adduced by the respective parties and instructions of the court, which resulted in a verdict and consequent judgment in favor of appellees for $18,750, from which is this appeal.

At the conclusion of the testimony appellants requested a peremptory instruction, which the court refused to give, and now seek a reversal of the judgment on the ground that the court erred in refusing to instruct a verdict in their favor, contending:

First. That the undisputed evidence reflects that no contract of employment for the sale of the lease was entered into between the parties.

Second. If such a contract was entered into, appellees performed no substantial services for appellants therein.

(1).   Appellees were employed by appellants to drill an oil well to deep sand on the leased premises, and brought in a producing well of 12,000 barrels daily. Early Sunday morning May 24, 1925, a short time after the well came in, appellees and D. N. Johnson drove to El Dorado in a car.   Appellants were inexperienced in the development and handling of oil properties, and desired to sell the lease for as much as possible.   They had been advised by appellees to let agents, or what they called "lease-hounds" alone, else they would get them into trouble.

J. M. Garrett testified that, on the way to El Dorado, D. N. Johnson told him that he wanted to sell the property, and asked Mr. Modisett and himself to see if they could get a buyer for it; that, Sunday, he took Bob Matder, who represented the Humble Oil & Refining Company, to the well to check it up, and introduced him to appellants, who made them an offer for the property Monday morning, May 25.   Matder was then stopping at the Garrett Hotel, and, while appellants were in his room discussing the trade, witness saw and approached W. E. Thompson, with whom he was acquainted, and who represented the Phillips Petroleum Company, and had a conversation with him about purchasing the property; that witness arranged to take Thompson to see appellants at 11 o'clock; that Mr. Modisett called Matder's room over the telephone and advised J. B. Hawley not to close the deal with him, that they had a better offer; that, when Mr. Hawley came down the stairs, witness said to him and Mr. Johnson, "I have a competent buyer for the property from whom we can get more money; you be at your cottage at 11 o'clock and I will have a man out there to make you an offer on the property;" that, at 11 o'clock, witness took Thompson out to the cottage in his car and introduced him to appellants—none of them knew him; that they began negotiations which resulted later in the sale of the lease for $375,000 to the Phillips Petroleum Company; that they had offices in the First National

Bank at El Dorado, and were making lots of sales in Nevada County at that time, but did not know whether they had sold any leases in Ouachita County, and could not remember any particular sales they made; that he paid a brokerage tax to sell leases in El Dorado in 1924, but did not for 1925, because they incorporated in 1925, about June 1; that, after their sale of the lease, appellants settled with them for drilling the well, at which time nothing was said about the commission for making the sale of the lease.

Joe Modisett testified that, on the way to El Dorado the morning after the well came in, Johnson told Garrett and himself to go ahead and see what we could get for the lease; that we knew more about the lease than they did, and "to go ahead and see some of the men when we got to town, as he wanted to sell the lease;" that witness asked Thompson why he did not buy the property, at which time he called Mr. Hawley from Mr. Matder's room and told him not to close the deal with the Humble Oil & Refining Company, because Thompson, the Phillips Petroleum Company man, was there; that he was at the home of appellant when Garrett brought Thompson and introduced him to them; that he never thereafter disavowed any intention to claim a commission.

D. N. Johnson testified that, after the well came in, he told Garrett and Modisett on the way to El Dorado that they wanted to sell the lease, but that he did not know that they were brokers; that Matder made an offer Sunday, the 24th, for the Humble Oil & Refining Company, which they refused; that nothing further was done until Garrett brought Thompson, representative of the Phillips Petroleum Company, out to the house where they lived; that was the first intimation he had that Garrett had anything to do with the trade, and did not know that Garrett was acting or representing them as a broker in trying to sell the lease; that he did not know that Garrett was claiming to be a broker in handling the deal until June 10, after the property was sold on May 27; that they settled with Garrett and Modisett for drilling the well

after the sale of the lease, and made no claim for a commission at that time, nor afterwards when he saw them, until Garrett wrote him, on July 10; that, some time after receiving the letter, he had a conversation with them, in which Garrett said he thought they ought to have something, but, in a conversation with Modisett after the first conversation referred to, he said that he did not make his money that way, and disavowed any intention of claiming a commission; that it is true that Modisett telephoned to Hawley, while they were in Matder's room, not to close the deal, but that he attached no importance to it, and broke off with Matder because he did not offer what they wanted.

W. E. Thompson testified that he was interested in buying the lease for the Phillips Petroleum Company, and inspected it on his own motion on Sunday morning, the 24th; that he returned to El Dorado and that, by inquiry, he ascertained that D. N. Johnson was the president of the Smackover Petroleum Corporation that owned the lease; that later in the day he visited and checked up some of the surrounding wells; that on Monday morning, the 25th, he went to the Garrett Hotel, met Jimmy Garrett, and learned from him that D. N. Johnson and J. B. Hawley were upstairs in the hotel on a deal with some one relative to the sale of the lease; that he would get in touch with appellants, and, if they wanted to sell their lease, he would let me know; that he arranged to meet Garrett at 12 o'clock, at which time they met, and Garrett took him to the home of appellants and introduced him to them; that, on the way, he told him that one party who wanted to buy would pay him a commission, and wanted to know if I would allow him a commission if I bought; that I told him "no"; that Garrett took no part in the negotiations, and that he was not aware that Garrett was appellants' agent; that, after talking the matter over and looking at the well again, he made appellants an offer, which they declined, making a counter-offer, which he accepted; that several days thereafter they closed the deal in accordance with their agreement.

A. B. Taylor testified that he was the collector of occupation taxes in El Dorado, and that J. M. Garrett paid no occupation tax for himself or his company in 1924, but did pay one as drilling contractor for himself and also for Garrett & Modisett for the last quarter of 1925.

W. H. Flannigan testified that he was present when Garrett brought Thompson to the house and introduced him to them, but that he did not know that Garrett was a broker or acting as agent for them; that he sent a telegram to Johnson advising a compromise of appellees' claim, but Johnson refused to make any kind of a settlement; that when they settled with appellees for drilling the well they made no claim for a commission; that subsequently in a conversation with Modisett he disavowed any claim to a commission.

J. B. Hawley testified that Modisett telephoned him not to close the deal with Matder, but that he did not attach any importance to the matter; that he was present when Garrett brought Thompson to the house and introduced him to them, but he had no idea that Garrett was acting in the capacity of a broker.

Only enough evidence has been set out in this opinion to indicate that the testimony was conflicting relative to the employment of appellees by appellants to sell their lease for them.

The rule of law applicable to cases of this character was announced by this court in the case of *Scott* v. *Patterson & Parker*, 53 Ark. 49, 13 S. W. 419, as follows: "If a real estate agent employed to sell land introduces a purchaser to the seller, and, through such introduction, the sale is effected, he is entitled to his commission, although the sale is made by the owner."

There is sufficient substantial evidence in the record to sustain the verdict and judgment under the rule thus announced, when it is remembered that a contract of employment may be implied and need not be expressed either orally or in writing. Appellees testified that appellants requested them to procure a purchaser for

their lease, saying that appellees were experienced in the business, and that they were not. The undisputed testimony reveals that they procured and introduced a purchaser to appellants, who bought and paid them $375,000 in cash for the lease. Of course, in a way, appellants denied a contract of employment, but their denial made the question of employment one of fact to be determined by the jury. The question of employment was submitted to the jury under correct instructions, hence appellants are bound by the verdict. This court never disturbs verdicts of juries rendered under proper instructions on conflicting testimony.

It was not necessary that the contract of employment should specify the amount of the commission. If there was an employment, and the jury found there was, the law implies that appellees were entitled to reasonable compensation. From what has been said, appellants are not correct in their contention that the undisputed evidence shows there was no contract of employment.

(2) The contention that appellees performed no services entitling them to a commission, even if there were a contract, is without merit.

Appellees produced a purchaser who was not only willing to buy the lease for the price asked, and upon the terms required, but who actually purchased the lease from appellants for $375,000 in cash. They secured a purchaser who paid them $75,000 more than the first man they introduced to them and $175,000 more cash than their first prospect offered to pay.

Appellants' last contention for a reversal of the judgment is that it is excessive. The undisputed evidence shows that five per cent. commission on sales of oil and gas leases, where the price does not exceed $375,000, is usual and customary. The fact that they procured a purchaser who paid $75,000 more than they had been offered for the lease indicates that the fee recovered is not excessive.

No error appearing, the judgment is affirmed.